UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARKETA PUGH, on behalf of
JA'RYAH WATTS,
     Plaintiff,

vs.                          Case No.: 3:19cv42/MCR/EMT

ANDREW SAUL,
Commissioner of Social Security,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

     This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act (Act). The case is now before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for Child's Supplemental Security Income (Child's SSI), submitted on behalf of Plaintiff's minor child, under Title II of the Act, 42 U.S.C. § 423. Upon review of the record before the court, the undersigned concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and

application of proper legal standards and that the Commissioner's decision, therefore, should be affirmed.

## ISSUES ON REVIEW

Plaintiff, Claimant's mother who is proceeding pro se on Claimant's behalf, challenges the Commissioner's decision finding her minor child not disabled under the Act. Plaintiff alleges Claimant suffers from asthma, attention-deficit/hyperactivity disorder (ADHD), anxiety, and "disruptive behavior disorders"—oppositional defiance disorder and conduct disorder, in particular— and, as a result, "needs constant and current care" and thus is disabled (ECF No. 30 at 1–5).

## PROCEDURAL HISTORY

Plaintiff filed an application for Child's SSI on September 14, 2015, alleging Claimant was disabled as of May 2, 2014, Claimant's date of birth (tr. 302–07).[1] Plaintiff's application was denied initially and on reconsideration (tr. 1–6, 234–39). Plaintiff filed a request for a hearing (tr. 253–61). The request was granted, and an

---

[1] The administrative record, as filed by the Commissioner, consists of eleven volumes (ECF Nos. 28–1 to 28–11) and has 499 consecutively numbered pages. References to the record will be by "tr.," for transcript, followed by the page number. The page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

administrative law judge (ALJ) conducted a hearing on September 13, 2017 (tr. 197–216).    In a decision dated April 2, 2018, the ALJ found Claimant not disabled under the Act (tr. 7–28).    Plaintiff petitioned the Appeals Council for review of the ALJ's decision; the Appeals Council denied the request (tr. 1–6).    The ALJ's decision thus became the final determination of the Commissioner, and that determination is now ripe for review.

<u>FINDINGS OF THE ALJ</u>

In his written decision of April 2, 2018, the ALJ made a number of findings relative to the issues raised in this appeal, including the following:

- Claimant was born on May 2, 2014, and was an older infant on August 27, 2015, the date the application was filed, and a preschooler on the date of the decision (20 C.F.R. § 416.926a(g)(2)) (tr. 13).

- Claimant has not engaged in substantial gainful activity since August 27, 2015 (20 C.F.R. §§ 416.924(b) and 416.971) (*id.*).

- Claimant has the following severe impairment: oppositional defiance disorder (20 C.F.R. § 416.924(c)) (*id.*).

- Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.

§§ 416.924, 416.925, and 416.926) (tr. 14).

- Claimant does not have an impairment or combination of impairments

  that functionally equals the severity of the Listings (20 C.F.R.

  §§ 416.924(d) and 416.926a) (*id.*).

- Claimant has not been disabled, as defined by the Act, since August 27,

  2015, the date the application was filed (20 C.F.R. § 416.924(a)) (tr.

  25).

## STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is

supported by substantial evidence and based upon proper legal standards."    *Lewis

v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936

F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the

[Commissioner] only when convinced that it is not supported by substantial evidence

or that proper legal standards were not applied.").    Substantial evidence is "'such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"    *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.

Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).    "Substantial

evidence is something 'more than a mere scintilla, but less than a preponderance.'"

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*,

831 F.2d 1007, 1011 (11th Cir. 1987)).    Even if the evidence preponderates against

the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence in the record.    *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th

Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide

the facts anew, reweigh the evidence, or substitute [its] judgment for that of the

[Commissioner.]'"    *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)

(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also*

*Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In

determining whether substantial evidence supports a decision, we give great

deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir.,*

*Office of Workers' Comp. Program, U.S. Dep't of Labor*, 95 F.3d 1079, 1082 (11th

Cir. 1996)).    A reviewing court also may not look "only to those parts of the record

which support the ALJ" but instead "must view the entire record and take account

of evidence in the record which detracts from the evidence relied on by the ALJ."

*Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).    Review is deferential

to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[2]

## FACTUAL BACKGROUND

Plaintiff alleges Claimant is disabled due to ADHD, disruptive behavior disorder, anger problems, anxiety, speech delay, and severe asthma (ECF No. 30 at 1–4).    As set forth above, the date of alleged onset is May 2, 2014, Claimant's date of birth (tr. 302).    Both Plaintiff and Claimant attended the September 2017 hearing, at which time Claimant was three years old (tr. 199, 205).[3]    Claimant attended preschool and was enrolled in the Exceptional Student Education (ESE) program at the time (tr. 205).

Plaintiff said Claimant was "out of control" and in trouble at school "every day, every single day," for not following directions, not listening to the teacher,

---

[2] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.    *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

[3] As noted *supra*, Plaintiff proceeds pro se in this appeal on behalf of Claimant; Claimant, however, was represented by counsel at the time of the hearing (*id.*).

fighting with other students, and disrupting class (tr. 205, 207).[4]    Plaintiff said she once "had to go get her out of school" and that "[i]f you see her now, she [sic] just busy and she's very defiant" (tr. 205).    According to Plaintiff, Claimant's counselor "diagnosed her of [sic] being very defiant" (*id.*).    Plaintiff testified Claimant does not listen to her and has "a speech problem, too.    She—she's out of control" (*id.*). The ALJ questioned whether Claimant truly was out of control at three years old, and Plaintiff responded in the affirmative (*id.*).

Plaintiff explained that Claimant fought with her brother, who also was diagnosed with oppositional defiant disorder, as well as hyperactivity, four or five times a week (tr. 211–12, 215).    She had temper tantrums and sometimes hit and "physically jump[ed]" at Plaintiff when being disciplined (tr. 214).    Those types of incidents occurred five or six days a week, Plaintiff said (*id.*).    Allegedly due to anxiety, Claimant pulled her own hair out and banged her head against the wall; that behavior seemed to have become less frequent as of the time of the hearing, however, occurring only "[e]very now and then" (tr. 212).    Plaintiff said Claimant enjoyed playing in her toy kitchen and on her tablet, "do[ing] her ABC's, her colors, her

---

[4]  Claimant's educational records show she had difficulty keeping her hands to herself and staying in her seat; was aggressive (hitting and kicking other children and adults); and had difficulty following directions (tr. 361–407).

shapes, her numbers, and listen[ing] to nursery rhymes" on the tablet (tr. 208).

Plaintiff testified that despite behavioral problems at school, Claimant did fairly well

with things like learning her ABC's, colors, and shapes (*id.*).   In response to

questions from the ALJ, Plaintiff confirmed Claimant could run, jump, and skip; had

a good appetite; and was "pretty good about taking baths and that type of thing" (tr.

208, 210).

    With regard to the alleged speech problem, Plaintiff testified Claimant had

difficulty pronouncing words and that she "sometimes [could not] understand what

[Claimant was] saying" (tr. 212).   Claimant's checkups were normal, however,

showing she met all developmental milestones (tr. 409–13, 421–24, 435–38, 448–

51, 455–57).

    The first indication in the record of behavioral problems is a medical record

from a July 10, 2015, visit to the office of Claimant's pediatrician, Pediatric

Associates, PA–Cordova, during which Plaintiff reported Claimant had "quite a

temper" (tr. 452).   Plaintiff informed the pediatrician, Jeneile Cordell, M.D., that

when disciplined, Claimant laughed and "continue[d] doing the forbidden activity"

(*id.*).   Plaintiff explained that if she "smack[ed]" Claimant, Claimant would "hit[]

her back" and Claimant "often thr[ew] full blown temper tantrums" but went to sleep

by herself and slept well (*id.*).    Dr. Cordell found that Claimant made good eye contact and was "appropriately apprehensive" during the examination (tr. 453). She noted that a cranial ultrasound obtained during the neonatal period was normal (tr. 452).    Dr. Cordell advised Plaintiff that Claimant's recent oppositional behavior most likely was a normal developmental phase that would improve as Claimant developed language skills (tr. 453).[5]    She nevertheless referred Plaintiff to the Early Steps program for "developmental evaluation and continued monitoring" (*id.*).[6]

On August 4, 2015, Plaintiff and Claimant visited Children's Home Society of Florida for "therapeutic services" (tr. 463).[7]    Terri T. Perkins, LCSW, CAP, was the assigned clinician (tr. 485).    During the interview, and in response to questions set forth on a form, Plaintiff indicated Claimant often experienced extreme mood

---

[5]  Claimant was only fourteen months old at the time.

[6]  According to its website, Early Steps is part of Ascension, and "[t]he goal of Early Steps is to connect families and caregivers with services to enhance their child's development so that children will be ready to succeed when they enter school.  These services are provided at no cost to families."    https://healthcare.ascension.org/Locations/Florida/FLPEN/Pensacola-Early-Steps-Pensacola (last visited Aug. 11, 2020).

[7]  According to its website, the mission of Children's Home Society of Florida is "to end the need for foster care as we know it."    https://www.chsfl.org/why-were-different/ (last visited Aug. 11, 2020).  Its goal is "to keep more kids safe at home with their families" by "building upon parents' strengths and empowering them to raise their children in healthy, nurturing homes."    *Id.*  It "partner[s] with parents, providing more services before crises happen, and meeting children and families where it[']s most convenient and comfortable for them" in order to "help build strong families, keep families together, and prepare kids and teens to achieve success."    *Id.*

changes and temper tantrums, was destructive and unresponsive to discipline, and engaged in "self-hurting behavior" (tr. 470).   Plaintiff also indicated Claimant enjoyed being held, was active and alert to what was happening, and had predictable hunger patterns (*id.*).   Plaintiff indicated Claimant sometimes cried, was afraid of new faces or places, explored, interacted with adults and children, and was predicable in sleep-walking patterns (*id.*).   When asked whether Claimant had experienced any of approximately fifty problems identified on a form in the past thirty days, Plaintiff indicated Claimant had experienced hyperactivity, defiant behavior, and anger outbursts and also had banged her head on the wall and pulled out her hair (tr. 472).   Plaintiff nevertheless stated Claimant's "second or third year" was not "particularly difficult" (tr. 471).   According to Ms. Perkins' notes, Plaintiff's goal in seeking evaluation and/or treatment for Claimant was to "decrease negative behaviors of aggressiveness, hitting others, banging her head on the wall and having temper tantrums," to "see [Claimant's] emotional well-being improved," and to foster "a better relationship with her and her (JaR'Yah) brother" (tr. 480).

Ms. Perkins noted Claimant's appearance was neat and appropriate and Claimant appeared her stated age (tr. 478, 480).   Claimant demonstrated normal memory and speech, with good expressive and comprehensive language (tr. 478).

Her motor activity was normal, and she was guarded but cooperative (*id.*). Claimant was not verbal, but she had a normal affect and was oriented to person, place, object, and time (tr. 476, 479).[8]   Her insight, judgment, and abstract reasoning were within normal limits, and her fund of information was consistent for her age and grade (tr. 479).   Claimant had limited impulse control and sense of responsibility but rational thought processes, no hallucinations, a normal appetite and sleep patterns, and an average estimated IQ (*id.*).   Ms. Perkins noted Claimant did not play with other children, barely interacted with her, did not engage in independent play, remained very close to her mother, and was not friendly with strangers (tr. 480).   Ms. Perkins also noted Claimant was "tiny for her age" and that there were "concerns regarding [her] gross and fine motor skills as evidenced by her movements," as Claimant appeared to have difficulty standing, walking, and running during play (*id.*).   Ms. Perkins found "significant problems regarding [Claimant's] emotional or behavioral development at [the] time" and that Claimant met the "criteria for Anxiety Disorder NOS," noting Claimant had "difficulty relaxing, separating from her mother, irritability, crying and tantrums," and "pull[ed] out her hair and bang[ed] her head on the wall when frustrated" (*id.*).

---

[8]  Plaintiff was fifteen months old at the time.

Plaintiff took Claimant for a checkup a week later, on August 10, 2015 (tr. 455).   Dr. Ulrike Benny, M.D., conducted the examination (tr. 457).   Dr. Benny noted Claimant's affect and behavior were appropriate for her age (*id.*).   A few weeks later on September 3, 2015, Jennifer Walker, M.D., similarly noted Claimant was alert and interactive and that her actions were appropriate for her age (tr. 458–60).

On August 31, 2016, and February 23, 2017, Early Steps administered Claimant the Battelle Developmental Inventory (BDI) (tr. 168–75, 176–86).[9]   The Escambia County School District interpreted the results of the February 23, 2017, BDI when evaluating Claimant for "Psychological-Development/Speech-Language" on April 5, 2017, when Claimant was almost three years old (tr. 187–94).   Claimant's overall score fell within the mild developmental delay range (tr.

---

[9]  According to the records,

> "[t]he Battelle Developmental Inventory™, 2nd Edition, (BDI-2™) is an early childhood instrument based on the concept of developmental milestones.  As a child develops, he or she typically attains critical skills and behaviors sequentially, from simple to complex.  BDI-2 helps measure a child's progress along this developmental continuum by both global domains and discrete skill sets in the following areas: Adaptive, Personal-Social, Communication, Motor, and Cognitive" (tr. 495).

It appears Early Steps administered Claimant the BDI on at least one other occasion, August 18, 2015 (*see* tr. 495).

Case No.: 3:19cv42/MCR/EMT

188).    Claimant's Adaptive Domain score, which measures the "ability to use information and skills acquired in the other domains" for self-care and personal responsibility, fell within the mild developmental delay range (tr. 188).    In the Personal-Social Domain, which assesses "abilities and characteristics that allow a child to engage in meaningful social interaction with adults and peers," Claimant's score fell within the low average range (tr. 189).    The same was true with regard to the Communication Domain, which measures "how effectively a child receives and expresses information and ideas through verbal and nonverbal means," and the Motor Domain, which measures the "ability to control and use the large and small muscles of the body" (tr. 190).    Finally, in the Cognitive Domain, which measures "skills and abilities most commonly thought of as 'mental' or 'intellectual,' with the exception of language and communication skills," Claimant scored in the mild developmental delay range (tr. 191).    In the summary, the evaluators noted Claimant "was a delight to evaluate" and was "mastering personal-social communication, and motor skills within the broad range considered average for her age" but that Claimant had "mild developmental delays . . . in [the] acquisition of adaptive and cognitive skills" and "communication . . . characterized by delayed

speech articulation skills, with numerous phonological processes" observed (tr. 193).    The evaluators forwarded the report to an ESE staffing committee (*id.*).

## DISCUSSION

### I.    Plaintiff's Memorandum

As a threshold matter, the undersigned notes that the Scheduling Order entered in this case requires each party to "file and serve a brief setting forth concisely the basis for affirming or reversing the final decision of the Commissioner and a detailed analysis of the administrative record, with citation of authorities in support of the party's position and to the administrative record" (ECF No. 29 at 1). The order cautions that "[f]ailure by either party to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development" (*id*. at 3).

Plaintiff filed a five-page "Scheduling Order Request for Memorandum" (ECF No. 30), in which she essentially alleges the Commissioner erred in finding Claimant not disabled and lists a number of conditions from which she contends Claimant suffers, with an explanation of each condition and what appear to be references to four sources: (1) American Academy of Allergy Asthma and Immunology; (2) "2 WebMD"; (3) "August 14, 2018, Francesca Coltrera Senior

Content Writer, Harvard Health Publishing"; and (4) "Children and Adults with Attention-Deficit/Hyperactivity Disorder (CHADD)" (*id.* at 1–4).    Plaintiff did not include a single citation to the record to support any factual contention set forth in her Memorandum (*id.*).    Defendant thus argues Plaintiff abandoned all issues raised on appeal.

It is well-settled that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" and that "[a]ll pleadings shall be so construed as to do substantial justice."    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).    Nevertheless, issues not briefed on appeal, even by a pro se litigant, are deemed abandoned.    *See Gamble v. Comm'r of Soc. Sec.*, 685 F. App'x 889, 890 (11th Cir. 2017) (noting the court "liberally construes pro se briefs" but "issues not briefed on appeal by a pro se litigant are deemed abandoned" and holding that because the plaintiff did not offer any argument to support the issues raised on appeal, precedent required the court to find the issues abandoned) (internal marks omitted)); *Handy v. Cook*, 476 F. App'x 844, 844–45 (11th Cir. 2012) (finding issues abandoned where pro se plaintiff failed to offer any argument in support thereof).    Here, it appears Plaintiff at least attempted to offer argument and authority in support of the issues raised.    In light of that fact, as well as the fact

Plaintiff is proceeding pro se on behalf of a minor child, the court questions whether substantial justice would be served by a finding Plaintiff abandoned the issues raised in her Memorandum.   In any event, the undersigned need not make such a determination because the Commissioner's decision is due to be affirmed on the merits for the reasons set forth below.

II.   The Commissioner's Decision

A person is considered disabled under the Act if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).   "Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.,* 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(i) and 20 C.F.R. § 416.906).   "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case [the child] is considered 'not disabled' and is ineligible for benefits."   *Id.* (citing 20 C.F.R. §§ 416.924(a), (b)).   "The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if [the child]

has 'an impairment or combination of impairments that is severe.'" *Id.* (citing 20 C.F.R. §§ 416.924(a), (c)).    "A disability counts as an impairment only if it arises from 'anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.'"    *Id.* (citing 20 C.F.R. § 416.908).    "Consequently, the determination as to whether someone has an impairment at all is primarily based on medical evidence."    *Id.* (citing 20 C.F.R. § 416.913(a) ("[The ALJ] need[s] evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).").    "In contrast, non-medical evidence, including the testimony of '[e]ducational personnel' and 'parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy,' may be used to demonstrate that a child's impairment is severe."    *Id.* (citing 20 C.F.R. §§ 416.913(d)(2), (4); 416.924a(a)(2)).

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." *Id.* (citing 20 C.F.R. §§ 416.911(b), 416.924(d)).    "This determination is made according to objective criteria set forth in the Code of Federal Regulations ('C.F.R.')."    *Id.*    According to the regulations, a "marked" limitation exists when the claimant's "impairment(s) interferes seriously with [the claimant's] ability to

independently initiate, sustain, or complete activities. . . .   [D]ay-to-day functioning may be seriously limited when [the claimant's] impairment(s) limits only one activity or when the interactive and cumulative effects of [claimant's] impairment(s) limit several activities."   20 C.F.R. § 416.926a(e)(2)(i).   "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'"   *Id.*   A child has an "extreme" limitation in a domain when her "impairment(s) interferes very seriously with [her] ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(3)(i).   A child's "day-to-day functioning may be very seriously limited when [her] impairment(s) limits only one activity or when the interactive and cumulative effects of [her] impairment(s) limit several activities."   *Id.*

"The C.F.R. contains a Listing of Impairments ['the Listings', found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."   *Shinn*, 391 F.3d at 1278 (citing 20 C.F.R. § 416.925(a)).   "For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered 'marked and severe.'"   *Id.* at 1278–79 (citing 20 C.F.R. § 416.925(a) ("The Listing of Impairments describes . . .

impairments . . . for a child that cause [] marked and severe functional limitations.")). "A child's impairment is recognized as causing 'marked and severe functional limitations' if those limitations 'meet[], medically equal[], or functionally equal[] the [L]istings.'"    *Id*. at 1279 (citing 20 C.F.R. §§ 416.911(b)(1), 416.902, 416.924(a)).    "A child's limitations 'meet' the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment.    A child's limitations 'medically equal' the limitations in the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'"    *Id*. (citing 20 C.F.R. § 416.926(a)(2)).

"Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings."    *Id.*    "In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities" in the following six domains:

(i)    Acquiring and using information;
(ii)    Attending and completing tasks;
(iii)    Interacting and relating with others;
(iv)    Moving about and manipulating objects;
(v)    Caring for oneself; and
(vi)    Health and physical well-being.

*Id*. (citing 20 C.F.R. § 416.926a(b)(1)).    "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains."  *Id.* (citing 20 C.F.R. §§ 416.926a(g)–(l)).    "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain."    *Id*. (citing 20 C.F.R. §§ 416.926a(d), 416.925(a)).

"Assuming that the limitations stemming from a child's severe impairment meet, medically equal, or functionally equal the limitations specified in the Listings, the ALJ concludes by ensuring that the impairment 'meets the duration requirement' specified in the federal regulations."    *Id.* (citing 20 C.F.R. § 416.924(a)).    "This 'duration requirement' is that the impairment must 'be expected to cause death or . . . has lasted or can be expected to last for a continuous period of not less than 12 months.'"    *Id.* (citing 20 C.F.R. §§ 416.906, 416.909).    Plaintiff bears the burden of proving Claimant is disabled within the meaning of the Act.    *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Here, the ALJ found Claimant had a severe impairment of oppositional defiance disorder but did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the criteria of the Listings (tr. 13–14). *See* 20 C.F.R. § 416.924(d). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d at 1224. Because oppositional defiant disorder is not addressed in the Listings, for purposes of determining whether Claimant had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, the ALJ considered Listing 112.08 for personality and impulse-control disorders (tr. 14).

In order to satisfy Listing 112.08, one must present medical documentation of a pervasive pattern of one or more of the following: (1) distrust and suspiciousness of others; (2) detachment from social relationships; (3) disregard for and violation of the rights of others; (4) instability of interpersonal relationships; (5) excessive emotionality and attention seeking; (6) feelings of inadequacy; (7) excessive need to be taken care of; (8) preoccupation with perfectionism and orderliness; or (9) recurrent, impulsive, aggressive behavioral outbursts. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 112.08(A). One must also have extreme limitation of

one, or marked limitation of two, of the following areas of mental functioning: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself.   20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listings) § 112.08(B).

The ALJ found no medical documentation in the record of a pervasive pattern of any of the characteristics set forth in Listing 112.08 or even a marked limitation in any of the areas of mental functioning (tr. 14).   Plaintiff does not challenge the ALJ's finding in that regard and, in any event, the record as summarized above does not support a finding that Claimant *met or medically equaled* the criteria of the Listing; the undersigned thus will not address it further.

The ALJ also found Claimant had no limitation *functionally equivalent* to a listed impairment because Claimant had no more than mild limitation in any of the six domains set forth in 20 C.F.R. § 416.926a(b)(1).   For the reasons set forth below, the undersigned finds the ALJ's decision in that regard supported by substantial evidence in the record.

A. Acquiring and Using Information

The ALJ found "nothing in the record to reflect any impairment the claimant might have related to and regarding the domain of acquiring and using information"

and, thus, that Claimant had no limitation in that regard (tr. 19).    The ALJ observed that as of July 2, 2014, when Claimant was two months old, Claimant was "'[m]eeting developmental milestones well" and Plaintiff had no concerns (*id.*). The ALJ noted Claimant had "regular and thorough well-child check-ups" from birth through September 2015, when she had her fifteen-month checkup—the last such visit reflected in the record—and reached developmental milestones without delay or limitation (*id.*).    The ALJ further observed that Claimant's BDI scores were in the average range (*id.*).    The ALJ cited a September 14, 2015, Function Report in which Plaintiff indicated Claimant had no difficulty understanding and learning at sixteen months old (*id.*).

Given the February 23, 2017, BDI results, which indicate Claimant had a mild developmental delay in acquiring and using information, the undersigned cannot find the ALJ's decision that Claimant had no limitation in that regard supported by substantial evidence in the record.    Because any limitation in acquiring and using information was *mild*, however, any error in finding no limitation was harmless because there is no evidence in the record that could even arguably support a finding that Claimant had a marked, much less extreme, impairment in acquiring or using

information or, hence, that she had an impairment that functionally equaled the Listings.[10]

### B. Attending and Completing Tasks

The ALJ also found Claimant exhibited no limitation in attending and completing tasks (tr. 19–20).   *See* 20 C.F.R. § 416.926a(h).   As the ALJ again observed, Plaintiff indicated on the September 14, 2015, Function Report that Claimant had no difficulty understanding and learning, including following two-step directions (tr. 20).   Moreover, Plaintiff testified at the hearing that Claimant played with toys and games, recited her ABC's, colored, and listened to nursery rhymes (tr. 20, 208, 318).   In connection with the evaluation performed by the Escambia County School District, Plaintiff informed the examiners that Claimant was "'helpful'" around the house and could follow one- and sometimes two-step instructions (tr. 187).   The examiners found Claimant "able to follow simple, one-step commands"; they also found Claimant exhibited "age-appropriate attention to tasks presented" (tr. 188).

---

[10] Courts must disregard errors or defects in a lower tribunal that "do not affect any party's substantial rights."   Fed. R. Civ. P. 61 (harmless error); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in the context of a social security case).

In considering Claimant's ability to attend and complete tasks, the ALJ did not address the fact that the BDI results showed mild developmental delay in the Adaptive Domain, which includes the ability to assume responsibility for performing simple chores and staying appropriately focused on a task (tr. 188).    As with acquiring and using information, however, because any limitation in attending and completing tasks was *mild*, any error in finding no limitation in that regard was harmless.

### C. Interacting and Relating to Others

The ALJ found Claimant exhibited less than marked limitation in interacting with and relating to others (tr. 20–21).    *See* 20 C.F.R. § 416.926a(i).    As the ALJ indicated, although the record shows Claimant had behavioral problems that caused difficulty in interacting with and relating to others, there is no evidence the problems rose to the level of a marked or extreme limitation (tr. 21).    In fact, the report prepared by the Escambia County School District indicates Plaintiff reported that Claimant's behavior improved after Claimant started counseling (tr. 187).    The report also indicates Claimant "easily separated from her mother and readily engaged with the examiners" (tr. 188).    Claimant "exhibited good joint attention, eye contact, and play skills" and "was a delight to evaluate" (*id.*).    And in the Personal-Social Domain, which includes abilities and characteristics that allow a

child to engage in meaningful social interaction with adults and peers, Claimant's score fell within the average range—low average, but average nonetheless (tr. 189). The undersigned thus finds the ALJ's decision that Claimant was limited in the ability to interact with and relate to others but that such limitation did not rise to the level of a marked or extreme limitation supported by substantial evidence in the record.

### D. Moving About and Manipulating Objects

The ALJ found Claimant exhibited no limitation in moving about and manipulating objects (tr. 21–22). *See* 20 C.F.R. § 416.926a(j). Claimant's medical records demonstrate that as of her fifteen-month checkup on August 10, 2015, Claimant could walk alone, feed herself with her fingers, drink with a cup, point, and crawl up stairs (tr. 455). In addition, Claimant's August 18, 2015, BDI confirmed she met milestones at fifteen months of age with average scores (tr. 495–98). Claimant mastered all but three of the fifteen skills in the gross motor sub-domain and all six of the skills in the fine motor sub-domain (tr. 498).[11] And Plaintiff did not identify any physical limitation when completing the Function Report (tr. 319).

---

[11] The three gross motor skills she did not master were running ten feet without falling, kicking a ball forward without falling, and walking up and down stairs without assistance (*id.*).

According to the February 23, 2017, BDI, in the Motor Domain, which includes gross, fine, and perceptual motor skills, Claimant's BDI score fell within the low average range (tr. 190). Moreover, Claimant's school records demonstrate she moved well and even attempted to move other children (tr. 366–68). The undersigned thus finds the Commissioner's decision that Claimant was not limited in the ability to move about and manipulate objects supported by substantial evidence in the record.

E.  Caring for Oneself

The ALJ likewise found no limitation in Claimant's ability to care for herself (tr. 22–23). As the ALJ observed, Claimant had normal checkups from birth through approximately fifteen months of age (tr. 22–23, 212, 409–60). The February 23, 2017, BDI revealed only a mild developmental delay with regard to self-care, including the ability to perform tasks such as eating, dressing, toileting, grooming, and getting ready for bed with increasing independence and being able to assume responsibility for simple chores, staying appropriately focused on a task, and avoiding common dangers (tr. 188). Hence, although there may be evidence of some limitation in Claimant's ability to care for herself, there is no evidence of a marked or extreme limitation in that regard. The undersigned therefore finds that

even if the Commissioner erred in finding no limitation in Claimant's ability to care for herself, any such error was harmless.

F.  Health and Physical Well-Being

Finally, the ALJ found Claimant had no limitation in health and physical well-being (tr. 24).   Claimant's initial assessment by the Children's Home Society of Florida in August 2015 reflects Claimant was in "excellent" general health (tr. 466). In the September 14, 2015, Function Report, Plaintiff indicated Claimant's physical abilities were not limited (tr. 319).   Claimant's medical records show she was treated for routine medical problems common among children, such as thrush, allergies, colds, and ear infections, but that she had no chronic conditions (tr. 417, 421, 430, 440, 445).   There simply is no evidence in the record that Claimant suffered from any physical limitation, much less a limitation that rose to the level of marked or extreme.   Accordingly, the undersigned finds the ALJ's decision that Claimant had no limitation in health and physical well-being supported by substantial evidence in the record.

CONCLUSION

For the reasons set forth above, the undersigned finds the Commissioner's decision—that Claimant's impairment did not meet, medically equal, or functionally equal a listed impairment and that Claimant, therefore, is not disabled under the

Act—supported by substantial evidence in the record and application of proper legal standards.[14]  *See Carnes,* 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").   The Commissioner's decision, therefore, should be affirmed.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the decision of the Commissioner be **AFFIRMED** and Plaintiff's application for Child's Supplemental Security Income be **DENIED**.

2.    That judgment be entered accordingly and the clerk be directed to close the file.

At Pensacola, Florida, this 12th day of August 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[14] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.   *See Moore,* 405 F.3d at 1208.

Case No.: 3:19cv42/MCR/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.